# STATE OF MICHIGAN

# COURT OF APPEALS

VANCO I LLC,

        Petitioner-Appellant/Cross-
        Appellee,

UNPUBLISHED
November 18, 2014

v

CITY OF GRAND RAPIDS,

        Respondent-Appellee/Cross-
        Appellant.

No. 317305
Tax Tribunal
LC No. 00-397653

Before: SHAPIRO, P.J., and WHITBECK and STEPHENS, JJ.

PER CURIAM.

Petitioner, Vanco I LLC (Vanco), appeals as of right the Tax Tribunal's May 2, 2013 opinion and judgment finding the true cash value of Vanco's property at 650 Ionia Ave SW (the property). Respondent, the city of Grand Rapids, cross-appeals as of right the Tax Tribunal's January 16, 2013 order denying its motion for summary disposition under MCR 2.116(C)(4). We affirm.

## I. FACTS

### A. BACKGROUND FACTS

On March 10, 2010, AFD (MN) LLC deeded the property to Vanco. Van Eerden Food Service owns Vanco. The property's February 16, 2010 tax bill indicates that AFD LLC is the property's taxpayer, and counsel received from Van Eerden a copy of the tax bill that is stamped "RECEIVED Jan 26 2010 Daniel Van Eerden President." Van Eerden asked counsel to appeal the property's 2010 property tax assessment. Counsel's engagement agreement listed the client as "Van Eerden Food Service as owner and representative of three entities AFD, LLC, Distribution Group, Inc and Vanco II, LLC[.]"

On June 1, 2010, counsel filed a petition contesting the property's 2010 property tax assessment. The petition named the petitioner as AFD LLC. Grand Rapids agreed that AFD LLC was a party in interest. In 2011 and 2010, respectively, the Tribunal granted counsel's motion to amend the petition to include tax years 2011 and 2012.

-1-

## B. GRAND RAPIDS'S MOTION FOR SUMMARY DISPOSITION

On December 11, 2012, Grand Rapids moved for summary disposition under MCR 2.116(C)(4), asserting that the Tribunal lacked subject matter jurisdiction because the petitioner was not a "party in interest." Grand Rapids asserted that that AFD LLC had petitioned the Tribunal when it no longer held an interest in the property.

On December 19, 2012, Vanco moved to correct the petitioner's name under the misnomer doctrine. Counsel indicated he mistakenly believed that Van Eerden owned AFD LLC. But AFD LLC and Van Eerden are unrelated companies. Grand Rapids responded that amending the case's caption would completely change the parties in the matter.

## C. THE TRIBUNAL'S RULING ON VANCO'S AND GRAND RAPIDS'S MOTIONS

On January 16, 2013, the Tribunal issued a decision on both parties' motions. The Tribunal denied Grand Rapids's motion for summary disposition. The Tribunal concluded that AFD LLC was a party in interest because it owned the property on the December 31, 2009 tax date. The Tribunal noted that Grand Rapids had not presented it with any evidence that AFD LLC had failed to retain an interest in the litigation.

The Tribunal then addressed "the true issue of whether the petition is properly pending" in light of counsel's admission that counsel was retained by Van Eerden, not AFD LLC. The Tribunal noted that the parties' engagement agreement stated that Van Eerden was the owner of AFD LLC and "incorrectly identif[ied] AFD LLC as an entity." The Tribunal found that both parties were aware of which parcel was at issue and "which entity owned the subject propert[y.]" It concluded that correcting the name on the 2010 petition would not prejudice either party. Considering the 2011 and 2012 tax years, the Tribunal concluded that, "due to the correction of the petition, the subsequent motions to amend the petition to add the 2011 and 2012 tax years are now considered to have been filed in the name Vanco I and not AFD, LLC."

Grand Rapids moved the Tribunal for reconsideration, asserting that the Tribunal had improperly rejected a response to Vanco's motion to which it had attached the covenant deed between AFD LLC and Vanco. The Tribunal conceded that it had improperly failed to consider Grand Rapids's response, which included the 2010 deed, and accepted the brief for filing. However, it found that any error was minimal, and it denied Grand Rapids's motion for reconsideration.

## D. THE PROPERTY'S TRUE CASH VALUE

At the hearing, Jeff Genzink, a state-certified general appraiser, testified that industrial building sales declined from 2007 to 2009. According to Genzink, industrial vacancy rates remained stable from 2009 to 2012, with warehouse vacancy rates around 15% and general industrial vacancy rates around 7.5%. Cold storage warehouses are a very small percentage of general warehouses.

Genzink testified that his appraisal covered tax years 2011, 2012, and 2013. Counsel for Vanco asked Genzink if he could provide a range of values of the property from 2008 to 2012.

In response to Grand Rapids's challenge, the Tribunal instructed Genzink to keep his testimony within the ranges of dates in his appraisal report.

Genzink testified that his appraisal used the sales comparison and income approached to value. For his sales comparison approach, Genzink searched for property sales of cold storage warehouse facilities, and he found 5 sales and listings. After adjusting for differences, Genzink concluded that the average warehouse space was valued at $33.28 per square foot during the tax years. Grand Rapids had appraised the property at $50.21 per square foot in 2010 (a value of $8,829,000), $45.02 per square foot in 2011 (a value of $7,910,200), and $43.12 per square foot in 2012 (a value of $7,575,400). Under his sales comparison approach, Genzink appraised the warehouse at $6,030,000.

For his income approach, Genzink used the "band of investment technique," which considers interest rates, amortization, loan to value, and equity dividend rate to arrive at an overall capitalization rate of 10.2%. This resulted in a value of $6,390,000 for the tax years.

Genzink reconciled his approaches and concluded that the property's value was $6,210,000 for each of the tax years at issue. Genzink determined that the property's value did not vary yearly because building sales were increasing but asking rates and vacancy rates were the same.

In response, Grand Rapids offered the property's assessment record cards into evidence. Vanco challenged admission of the cards, arguing that, "without the ability to question a valuation disclosure, I don't think there's a foundation basis to get it in." Grand Rapids contended that the cards were admissible as public records. Vanco agreed that the card was a public record, but contended that the cards were inaccurate. The Tribunal accepted the record cards into evidence.

## E. THE TRIBUNAL'S DECISION

Regarding the 2010 tax year, the Tribunal found that Vanco's appraisal did not cover that year. It also found that Vanco's appraisal did not consider the property's sale, which was relevant. It found that the best evidence of the property's value for the 2010 tax year was "the assessment shown on the property record cards . . . ." In its order denying Vanco's motion for reconsideration, the Tribunal elaborated that it did not presume that the assessment was valid, but rather considered the March 2010 sale as the best evidence of the property's true cash value and concluded that it supported a finding of the true cash value on the property record card.

Regarding the 2011 and 2012 tax years, the Tribunal found that Vanco developed sales and income approaches to value and Grand Rapids did not develop any approaches to value. It found that Vanco's sales-comparison approach lacked credibility because Genzink used the same two sales and three listings in his sales comparison for years 2011 and 2012 and because his adjustments were the same for both years. It also found Genzink's conclusion that the market was stable did not agree with the decline in Grand Rapids's assessments shown on the property record cards.

-3-

Accordingly, the Tribunal drew its own conclusions from Genzink's appraisal data. On the basis of the comparable sales data, the Tribunal concluded that Vanco "was able to show that the property was over-assessed for the tax years under appeal[.]"

The Tribunal found the property's true cash value and taxable value as follows:

| Year | 2010 | 2011 | 2012 |
|---|---|---|---|
| True Cash Value | $8,829,000 | $7,098,000 | $6,744,000 |
| Taxable Value | $4,414,500 | $3,549,000 | $3,372,000 |

## II. SUBJECT-MATTER JURISDICTION

### A. STANDARD OF REVIEW

This Court's review of a decision by the Tax Tribunal is limited.[1] This Court reviews issues of law de novo to determine whether the Tribunal "made an error of law or adopted a wrong principle."[2] We review de novo the interpretation and application of tax statutes.[3] If the language of the statute is unambiguous, this Court must enforce the statute as written.[4]

### B. CORRECTION OF THE PETITION

#### 1. LEGAL STANDARDS

The misnomer doctrine provides that "[w]here the right corporation has been sued by the wrong name, and service has been made upon the right party, although by a wrong name, an amendment substituting the true name of the corporation may be permitted."[5] It complements the rule that courts must "disregard any error or defect in the proceedings which do not affect the substantial rights of the parties."[6] "[A] misnomer *of a plaintiff or defendant* is amendable unless the amendment is such as to effect an entire change of parties."[7] But the misnomer doctrine does

---

[1] *Michigan Props, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012).

[2] *Id*. at 527-528.

[3] *Id*. at 518; *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006).

[4] *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 12-13; 795 NW2d 101 (2009).

[5] *Daly v Blair*, 183 Mich 351, 353; 150 NW 134 (1914) (quotation marks and citation omitted).

[6] MCL 600.2301.

[7] *Parke, Davis & Co v Grand Trunk Ry Sys*, 207 Mich 388, 391; 174 NW 145 (1919) (quotation marks and citation omitted, emphasis added).

not apply when "the plaintiff seeks to substitute or add a wholly new and different party to the proceedings[.]"[8]

## 2. APPLYING THE STANDARDS

Grand Rapids contends that the Tribunal improperly applied the misnomer doctrine in this case because, by changing the name of the petitioner, the Tribunal effectively substituted the parties. We disagree.

In *Miller v Chapman Contracting*, the plaintiff erroneously named himself as the plaintiff in a lawsuit when he should have named his bankruptcy trustee. After the limitations period expired, the defendant moved for summary disposition, contending that the plaintiff "was not the real party in interest and lacked standing to sue." The plaintiff moved to amend the complaint to add his bankruptcy trustee as a party. The trial court dismissed the case.[9]

The Michigan Supreme Court affirmed, reasoning that MCR 2.201(B) requires the real party in interest to prosecute an action.[10] The Michigan Supreme Court held that the correction was equivalent to adding a new party.[11] The Court reasoned that the addition of a party would not relate back to the date of the original pleading.[12] Accordingly, the trial court properly granted summary disposition and denied the plaintiff's request to amend because the misnomer doctrine did not apply and amending the complaint would have been futile.[13]

We conclude that this case is distinguishable from *Miller*. First, in *Miller*, the bankruptcy trustee authorized counsel to file suit on behalf of herself as trustee, but counsel mistakenly filed the suit in the petitioner's own name. Counsel was the petitioner's attorney. In contrast, here, AFD LLC was not involved in the suit. AFD LLC did not retain counsel or direct counsel to do anything. Counsel mistakenly believed that Van Eerden retained his firm on behalf of AFD LLC, but Van Eerden and AFD LLC are not actually related companies. Counsel was at all times counsel for Van Eerden as the owner of Vanco. And Vanco was the party actually prosecuting the suit. There is no indication that AFD LLC was even aware of the suit, much less that AFD LLC prosecuted or participated in the suit. This is a case where the petitioner's counsel simply put the wrong name on the petition.

Second, in *Miller*, counsel moved to amend to add the plaintiff as a party. This motion that was futile because it could not relate back to the time of original filing. Here, the Tribunal did not grant Vanco's motion to amend the petition to add Vanco as a party: it specifically

---

[8] *Miller v Chapman Contracting*, 477 Mich 102, 107; 730 NW2d 462 (2007).

[9] *Id*.

[10] *Id*. at 105-106.

[11] *Id*. at 106.

[12] *Id*. at 107.

[13] *Id*. at 108-109.

denied that motion. Instead, the Tribunal found that the misnomer doctrine applied and corrected the caption on the basis of counsel's misidentification of AFD LLC as the petitioner. Thus, this case does not concern a substitution of parties.

We conclude that the Tribunal properly applied the misnomer doctrine in this case. The Tribunal's correction did not change the parties in the suit. AFD LLC was never involved in this action. Vanco was always prosecuting the action, though it was doing so under the wrong name.

## C. PARTY IN INTEREST

### 1. LEGAL STANDARDS

When a statute states that the jurisdiction of the tribunal is invoked in a certain way, the statute is jurisdictional in nature.[14] MCL 205.735a(6) provides that a party in interest must file a petition to invoke the jurisdiction of the Tax Tribunal:

> The jurisdiction of the tribunal in an assessment or dispute as to property classified . . . as . . . industrial real property . . . is invoked by a party in interest, as petitioner, filing a written petition on or before May 31 of the tax year involved.

A party in interest is a "person[] with an interest in the property being assessed."[15] "An assignee is a real party in interest."[16]

### 2. APPLYING THE STANDARDS

Grand Rapids contends that MCL 205.735a(6)'s party-in-interest requirement is jurisdictional. We agree.

The clear and unambiguous language of the statute provides that Tribunal has subject-matter jurisdiction over a petition when a party in interest files a petition as a petitioner. It logically follows that the Tribunal's jurisdiction is *not* invoked when a party who is *not* a party in interest files a petition.[17] Accordingly, Grand Rapids is correct that if a party in interest did not file the petition in this case, the Tribunal lacked subject-matter jurisdiction and was required to dismiss the case.

Grand Rapids contends that the Tribunal erred when it concluded that it had subject-matter jurisdiction because AFD LLC was not a party in interest. Vanco contends that Grand Rapids may not make this argument because Grand Rapids admitted that Vanco was a party in interest. We agree that the Tribunal erred when it concluded that AFD LLC was a party in

---

[14] *Electronic Data Sys Corp v Flint Twp*, 253 Mich App 538, 534; 656 NW2d 215 (2002).

[15] *Jefferson Sch v Detroit Edison Co*, 154 Mich App 390, 397; 397 NW2d 320 (1986).

[16] *Kearns v Mich Iron & Coke Co*, 340 Mich 577, 583; 66 NW2d 230 (1954).

[17] *Jefferson Sch Co*, 154 Mich App at 397.

interest, but we conclude that the Tribunal properly determined that it had subject matter jurisdiction over the petition.

As an initial matter, we reject Vanco's waiver argument. Issues of subject-matter jurisdiction "can never be forfeited or waived."[18] It does not matter whether Grand Rapids agreed that AFD LLC was a party in interest. Grand Rapids cannot waive the Tribunal's subject-matter jurisdiction requirements.

We conclude that the Tribunal erred when it determined that AFD LLC was a party in interest. MCL 205.735a(6) provides that the Tribunal gains jurisdiction "by a party in interest, *as petitioner*, filing a written petition[.]" Here, AFD LLC never filed a written petition. And on March 10, 2010, AFD LLC deeded all of its claims related to the property to Vanco. Thus, AFD LLC no longer had an interest in the property at the time that Vanco filed the petition. AFD LLC did not, and could not, invoke the Tribunal's subject-matter jurisdiction.

However, the Tribunal's decision that it had subject-matter jurisdiction over the petition was correct because Vanco filed the petition and Vanco was a party in interest. Here, Vanco purchased the property on March 10, 2010, and, as noted above, AFD LLC deeded to Vanco all its claims related to the property, in law and equity. To the extent that AFD LLC had claims against Grand Rapids regarding the December 31, 2009 property tax assessment, those claims became Vanco's on March 10, 2010. On June 1, 2010, Vanco's counsel filed a petition contesting the 2010 property tax assessment.

At the time that Vanco filed the petition, Vanco had an interest in the property that Grand Rapids had assessed. Though Vanco admittedly filed the petition under the wrong name, Vanco *did* file the petition and *did* have an interest in the property. Accordingly, the Tribunal had subject-matter jurisdiction over the petition and it properly denied Grand Rapids's motion for summary disposition.

## III. THE PROPERTY RECORD CARDS

### A. STANDARD OF REVIEW AND ISSUE PRESERVATION

As discussed above, this Court reviews issues of law de novo to determine whether the Tribunal "made an error of law or adopted a wrong principle."[19] We may review the Tribunal's evidentiary rulings if they involve errors of law.[20]

---

[18] *Arbaugh v Y & H Corp*, 546 US 500, 514; 126 S Ct 1235; 163 L Ed 2d 1097 (2006) (quotation marks and citation omitted). See *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 204; 631 NW2d 733 (2001).

[19] *Mich Props*, 491 Mich at 527-528.

[20] *Georgetown Place Co-Op v City of Taylor*, 226 Mich App 33, 239; 572 NW2d 232 (1997).

An issue is preserved if it is raised before, addressed, or decided by the tribunal.[21]  Here, Vanco challenged admission of the property tax cards on foundation grounds.  Thus, to the extent that Vanco raises this issue on appeal, it is preserved.  But Vanco did not challenge admission of the property tax cards on either hearsay or procedural grounds.  Therefore, these issues are unpreserved.  This Court may choose to address an issue that a party did not raise before the Tribunal if no question of fact exists.[22]

## B.  LEGAL STANDARDS

A proponent of evidence must provide "evidence sufficient to support a finding that the matter in question is what the proponent claims."[23]  As an illustration, MRE 901(b) provides that a public record may be authenticated in conformance with MRE 901(a) by "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form . . . ."

## C.  APPLYING THE STANDARDS

Vanco contends that the Tribunal erred by admitting the property record cards without a proper foundation.  We disagree.

Here, Vanco conceded that the property record cards were public records.  Accordingly, the Tribunal properly concluded that the property record cards were admissible as public records. There was no need for the Tribunal to take judicial notice of the property record cards.  We reject Vanco's argument that the Tribunal lacked a sufficient foundation from which to authenticate the property record cards.

We decline to consider Vanco's unpreserved arguments that the Tribunal's admission of the cards violated hearsay rules and its procedural order.  This Court will generally decline to address unpreserved issues unless "a miscarriage of justice will result from a failure to pass on them, or if the question is one of law and all the facts necessary for its resolution have been presented, or where necessary for a proper determination of the case."[24]  We are not convinced that our review is necessary to prevent a miscarriage of justice.

## IV.  THE TRIBUNAL'S DETERMINATION OF TRUE CASH VALUE

---

[21] *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005); *Michigan's Adventure, Inc v Dalton Twp*, 290 Mich App 328, 330 n 1; 802 NW2d 353 (2010).

[22] *STC Inc v Dep't of Treas*, 257 Mich App 528, 601; 669 NW2d 594 (2003); *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 117; 662 NW2d 387 (2001).

[23] MRE 901(a).  See *Podmajersky v Dep't of Treas*, 302 Mich App 153, 166; 838 NW2d 195 (2013).

[24] *Heydon v MediaOne of Southeast Mich, Inc*, 275 Mich App 267, 278; 739 NW2d 373 (2007) (quotation marks and citations omitted).

## A. STANDARD OF REVIEW

This Court must accept the Tax Tribunal's factual findings if "competent, material, and substantial evidence on the record" supports them.[25] Substantial evidence supports the Tax Tribunal's findings if a reasonable person would accept the evidence as sufficient to support the conclusion.[26] Substantial evidence "may be substantially less than a preponderance."[27] Generally, competent and substantial evidence supports the Tribunal's determination if it is within the range of the evidence advanced by the parties.[28]

## B. LEGAL STANDARDS

The Michigan Constitution provides that true cash value is necessary to determine a property's proper tax.[29] The Legislature has provided that "property shall be assessed at 50% of its true cash value[.]"[30] The Legislature has defined "true cash value" as "the usual selling price . . . that could be attained for the property at a private sale. . . ."[31] True cash value and fair market value are synonymous, and both are "the probable price that a willing buyer and a willing seller would arrive at through arms length negotiation."[32]

The petitioner has the burden to establish the property's true cash value.[33] Even if the petitioner does not show that the property's tax was excessive, the Tax Tribunal has the duty to independently determine the property's true cash value under the approach that most accurately reflects the value of the property.[34]

---

[25] Const 1963, art 6, § 28; *Mich Props*, 491 Mich at 527.

[26] *In re Payne*, 444 Mich 679, 692; 514 NW2d 121 (1994); *Wayne Co v Mich State Tax Comm*, 261 Mich App 174, 186-187; 682 NW2d 100 (2004).

[27] *In re Payne*, 444 Mich at 692; *Wayne Co*, 261 Mich App at 186-187.

[28] *President Inn Props, LLC v City of Grand Rapids*, 291 Mich App 625, 631; 806 NW2d 342 (2011).

[29] Const 1963, art 9, § 3.

[30] MCL 211.27a(1).

[31] MCL 211.27(1).

[32] *Huron Ridge LP v Ypsilanti Twp*, 275 Mich App 23, 28; 737 NW2d 187 (2007).

[33] MCL 205.737(3); *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 389; 576 NW2d 667 (1998).

[34] *President Inn Props*, 291 Mich App at 631; *Meadowlanes Ltd Dividend Housing Ass'n v City of Holland*, 437 Mich 473, 485; 473 NW2d 636 (1991).

## C. TAX YEAR 2010

Vanco contends that the Tribunal erred when it found that Vanco did not present evidence of the property's taxable value in the 2010 tax year. Vanco contends that the Tribunal improperly ignored Geznik's general testimony about market trends. We disagree.

Our review of the record indicates that, in response to Grand Rapids's challenge to Geznik's testimony, the Tribunal excluded Geznik's evidence to the extent that it fell outside the range of his appraisal report. His appraisal report did not analyze the 2010 tax year. Accordingly, the Tribunal did not fail to consider this evidence. It ruled the evidence inadmissible. The Tribunal did not abuse its discretion by refusing to admit this evidence.[35]

Vanco also contends that the Tribunal erred when it based its finding of the property's true cash value on the property's March 10, 2010 sale because the sale was not an arm's-length transaction. We disagree.

Evidence of a property's sale price is not conclusive.[36] However, such evidence is relevant and the Tribunal must consider it "in the absence of an auction or forced sale."[37] Whether the property was exposed to the market is relevant to the weight of the evidence, not its admissibility.[38]

Here, Vanco and AFD LLC established the value of the property at $10,000,000 in their 2003 lease agreement. On December 8, 2008, the parties renewed the lease agreement. During renewed lease period, Vanco "approached the landlord about exercising a purchase of the property." AFD LLC eventually agreed to sell the property for $9,000,000. The property was not exposed to the open market. Geznik opined that Vanco was not typically motivated when it purchased the property, but that both parties were well-informed and acted in their best interests.

The property's sale price was relevant because it was close in time to the December 31, 2009 assessment date. The fact that the property was not exposed to the market affected the weight of the evidence, not its admissibility. And the Tribunal did not consider the sale price as conclusive evidence, but rather concluded that the sale price supported Grand Rapids's assessed value. Accordingly, we conclude that the Tribunal did not err by considering the property's March 10, 2010 sale when it was determining the property's 2010 taxable value.

---

[35] See MCR 6.201. See also *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010) (we review evidentiary rulings for an abuse of discretion).

[36] MCL 211.27(6); *Antisdale v City of Galesburg*, 420 Mich 265, 278; 362 NW2d 632 (1984).

[37] *Samonek v Norvell Twp*, 208 Mich App 80, 85; 527 NW2d 24 (1994).

[38] See *id*. at 86 (sale by quit claim deed).

## D. TAX YEARS 2011 AND 2012

Vanco asserts that the Tribunal failed to independently determine the property's true cash value for tax years 2011 and 2012 and improperly affording Grand Rapids's assessed values presumptive validity. We disagree.

The Tribunal did not adopt Grand Rapids's assessed values. Grand Rapids's assessed values were as follows:

| Year | 2011 | 2012 |
|---|---|---|
| True Cash Value | $7,910,200 | $7,575,400 |
| Taxable Value | $3,955,100 | $3,787,700 |

The Tribunal's findings were as follows:

| Year | 2011 | 2012 |
|---|---|---|
| True Cash Value | $7,098,000 | $6,744,000 |
| Taxable Value | $3,549,000 | $3,372,000 |

A comparison of Grand Rapids's proposed values and the Tribunal's findings shows that the Tribunal found that the property's true cash value for tax years 2011 and 2012 were less than Grand Rapids's assessed values. Accordingly, the Tribunal's finding that Grand Rapids had over-assessed the property was consistent with its value findings. Further, the Tribunal explained that it relied on Geznik's data, not the property record cards, when making its independent determination of true cash value.

We conclude that the Tribunal did not presume that Grand Rapids's assessed values were correct, and that the Tribunal independently determined the property's true cash value for tax years 2011 and 2012.

## V. CONCLUSION

We conclude that the Tribunal did not err when it corrected the name on the petition under the misnomer doctrine. We conclude that the Tribunal properly denied Grand Rapids's motion for summary disposition because it had subject-matter jurisdiction, though it did so for the wrong reason. We also conclude that the Tribunal did not neglect its duty to independently determine the property's true cash value for tax years 2010, 2011, and 2012, and that it used proper standards when making those findings.

We affirm.

/s/ Douglas B. Shapiro
/s/ William C. Whitbeck
/s/ Cynthia Diane Stephens

-11-